UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                       :

PEYMAN BAHADORAN,                            :

                                           Plaintiff,            :
                                                                           :                   21-CV-4884 (JMF)
                   -v-                                             :
                                                                            :               MEMORANDUM OPINION
CITY OF NEW YORK et al.,                       :                      AND ORDER
                                                                             :
                                           Defendants.       :
                                                                             :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Peyman Bahadoran brings this action, pursuant to 42 U.S.C. § 1983 and state law, against the City of New York (the "City") and New York City Police Department ("NYPD") Officers Jillian Suarez and Bryan Rozanski. Bahadoran seeks damages in connection with injuries he sustained in a June 2020 encounter in Lower Manhattan with a group of NYPD officers, during which Officers Suarez and Rozanski shot Bahadoran in his lower left back and left arm, leaving him paralyzed from the waist down. Bahadoran had wielded a knife at another NYPD officer before the shooting, but it is undisputed that he was unarmed at the time of the shooting. *See* ECF No. 55 ("Defs.' SJ Mem."), at 5. Before the Court are two motions filed by Defendants: a motion for summary judgment with respect to all of Bahadoran's claims, *see* ECF No. 48, and a motion, pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude the testimony of two experts, Seth W. Stoughton and Jeffrey J. Noble, *see* ECF No. 50. Upon review of the parties' motion papers, the Court GRANTS Defendants' motion for summary judgment as undisputed with respect to Counts V (intentional infliction of emotional distress) and VI (municipal liability), *see* ECF No. 57 ("Pl.'s SJ Mem."), at 16 n.7, and otherwise DENIES both motions.

First, with respect to summary judgment, there are plainly genuine disputes of material fact as to "[t]he central issue in this case": whether Officers Suarez and Rozanski "reasonably believed" that Bahadoran "posed a significant threat of death or serious physical injury" to another officer when they opened fire. ECF No. 52 ("Defs.' *Daubert* Mem."), at 1. Indeed, Defendants' motion papers are "replete with [their] own versions of the events," *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 38 (2d Cir. 2003), many of which are far from "indisputably" confirmed by evidence of the incident, *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012). For example, Defendants claim that video evidence confirms that Officer Suarez "[could not] see the counter [on which Bahadoran placed the knife] from her vantage point," Defs.' SJ Mem. 9; that she could not "see [Bahadoran's] right side, which is where the knife holster [was] hanging from," *id.* at 12; that Officer Rozanski "observed [Bahadoran] . . . reaching to a large sheath . . . as if he was about to draw a weapon," *id.* at 14; and that "there was no way" for Officer Rozanski to know that the clear object that Bahadoran was holding in his left hand was a water bottle rather than a knife, *id.* at 16. But none of these assertions are, in fact, indisputably confirmed by video evidence. *See* ECF No. 58 ("Pl.'s Rule 56.1 Response"), ¶¶ 30, 36, 51-53.

In any event, even if these assertions were confirmed by the video evidence, it would not necessarily follow that Officers Suarez and Rozanski had "probable cause" to believe that Bahadoran was armed with a knife and about to stab a fellow NYPD officer. *O'Bert*, 331 F.3d at 36; *see Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Both Officers testified that they did not see Bahadoran carrying a knife immediately before they shot him. *See* ECF No. 49-14 ("Suarez Dep."), at 83-84; ECF No. 49-15 ("Rozanski Dep."), at 95-96. And as Bahadoran points out, video evidence suggests that Officer Suarez saw him with both hands up and free of any weapon before she shot him in the lower back. *See* Pl.'s Rule 56.1 Response, ¶ 36. In other words, this

is not a case where "no reasonable jury," viewing the evidence in the light most favorable to the Bahadoran, "could find that defendants' [] use of force was excessive." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020); *O'Bert*, 331 F.3d at 37.  That defeats not only Defendants' arguments with respect to the merits, but also their argument that Officers Suarez and Rozanski are entitled to qualified immunity.  *See* Defs.' SJ Mem. 16-19; *see also, e.g.*, *Weather v. City of Mount Vernon*, 474 F. App'x 821, 824 (2d Cir. 2012) (summary order) (noting that various aspects of the qualified immunity inquiry "tend[] to converge . . . in excessive force cases, with the question ultimately being whether, in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful").[1]

      Second, although Defendants' *Daubert* motion presents a closer question, it too falls short.  Many of the issues Defendants raise go to the weight of Stoughton's and Noble's testimony, not its admissibility, and are properly addressed through cross-examination.  *See, e.g.*, *Vazquez v. City of New York*, No. 10-CV-6277 (JMF), 2014 WL 4388497, at *12 (S.D.N.Y. Sept. 5, 2014) (holding that objections based on the expert's "qualifications and the reliability of his methods and data[] ultimately go to the weight of his testimony rather than to its admissibility").  And contrary to Defendants' arguments, neither Stoughton nor Noble "intrudes on the province of the jury," Defs.' *Daubert* Mem. 7-8, "usurp[s] the jury function," *id.* at 9-11, or "invade[s] the province of the judge," *id.* at 8-9, whether by weighing the credibility of other witnesses or offering legal conclusions.  The witnesses cite relevant case law only to the extent it

---

[1]     In light of that, the Court need not and does not reach Bahadoran's argument that qualified immunity "does not exist." Pl.'s Mem. 17-18.  In any event, that argument is foreclosed by binding precedent.  *See White v. Pauly*, 580 U.S. 73, 79 (2017) (reaffirming qualified immunity doctrine as "important to society as a whole" (cleaned up)); *Vega v. Semple*, 963 F.3d 259, 272-73 (2d Cir. 2020) (explaining the policy interests that underlie qualified immunity); *cf. McKinney v. City of Middletown*, 49 F.4th 730, 756-58 (2d Cir. 2022) (Calabresi, J., dissenting) (criticizing qualified immunity doctrine as "misbegotten and misguided" but acknowledging that only the Supreme Court and Congress can "do away" with it).

3

informs nationally accepted police practices and standards. *See, e.g.*, ECF No. 51-1 ("Stoughton Rep."), at 24-25, 28-29; ECF No. 56-5 ("Noble Rep."), at 6-7.

To the extent that either expert does tread on the role of the jury or the Court, the Court can address the problem at trial through objections to particular questions and testimony and curative instructions. *See Vazquez*, 2014 WL 4388497, at *12; *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attack[] . . . ."). Finally, to the extent Defendants argue that Stoughton's and Noble's testimony is "irrelevant" because all "evidentiary issues" in this case "can be easily understood by the fact-finder," Defs.' *Daubert* Mem. 12, "it is settled in this Circuit that expert testimony is helpful even where the jury might have general knowledge of the subject at issue, so long as such knowledge may be incomplete or inaccurate given the particular facts and circumstances relevant to the particular case for which expert testimony is offered," *Katt v. City of New York*, 151 F. Supp. 2d 313, 358 (S.D.N.Y. 2001); *see also Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017) ("[E]xpert testimony on applicable professional standards is relevant because it can give a jury a baseline to help evaluate [] a defendant's deviations from those standards . . . ." (internal quotation marks omitted)). Notably, courts routinely admit testimony on police practices in civil rights cases of this sort. *See Fate v. Vill. of Spring Valley*, No. 11-CV-6838 (JPO), 2013 WL 2649548, at *5 (S.D.N.Y. June 13, 2013) (collecting cases); *see also, e.g.*, *Paul v. City of New York*, No. 16-CV-1952 (VSB), 2023 WL 3724152, at *6 (S.D.N.Y. May 30, 2023); *Lee v. Cnty. of Onondaga*, No. 13-CV-1285 (BKS), 2016 WL 9441028, at *2 (N.D.N.Y. Oct. 26, 2016); *Stern v. Shammas*, No. 12-CV-5210 (NGG), 2015 WL 4530473, at *2-7 (E.D.N.Y. July 27, 2015).

Thus, Defendants' motion to preclude Bahadoran from calling Stoughton and Noble must be and is denied. That said, the Court has two concerns about Bahadoran's proposed expert

testimony (although conspicuously neither concern is raised by Defendants). First, it is not clear why Bahadoran proposes to call *both* Stoughton and Noble, as their opinions are overlapping and substantially similar. Assuming that Bahadoran proposes to call both experts, he should show cause through a motion *in limine* why he should not be precluded from calling both on cumulativeness grounds. *See* Fed. R. Evid. 403; *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 96-97 (S.D.N.Y. 2001) (rejecting expert testimony that was "cumulative of" expert evidence already in the record). Second, in his expert report, Stoughton opines that Officers Suarez and Rozanski "positioned themselves on opposite sides of Mr. Bahadoran, creating a potential crossfire situation that was tactically unsound and contrary to generally accepted police practices." ECF No. 56-4, at 39; *see id.* at 35-39. According to Stoughton, the Officers' positions created "an unacceptably high likelihood that an errant bullet fired by one of them would strike the other." *Id.* at 39. That may be so, but it is not clear what relevance this opinion has to Bahadoran's injuries and claims. Accordingly, if Bahadoran plans to elicit that opinion from Stoughton, he should also show cause through a motion *in limine* why he should not be precluded from doing so.

For the foregoing reasons, Defendants are granted summary judgment with respect to Counts V (intentional infliction of emotional distress) and VI (municipal liability). Otherwise, Defendants' motions are DENIED. Unless and until the Court orders otherwise, the parties shall submit a proposed Joint Pretrial Order and associated materials (in accordance with Section 5 of the Court's Individual Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-furman) **within thirty days of the date of this Memorandum Opinion and Order**. (The Court will schedule a trial date — or a conference to discuss a trial date — after reviewing the parties' submissions.) In the meantime, the Court is of the view that the parties should try to settle this case without the need for a risky and expensive trial. To that

end, the Court directs the parties **to confer immediately** about the prospect of settlement and conducting a settlement conference before Magistrate Judge Barbara Moses (or before a mediator appointed by the Court or retained privately). If the parties agree that a settlement conference would be appropriate, they should promptly advise the Court and, if needed, seek an appropriate referral and extension of the pretrial deadlines.

As Count VI was the only claim brought against the City, the Clerk of Court is directed to terminate the City of New York as a party and to terminate ECF Nos. 48 and 50.

SO ORDERED.

Dated: November 8, 2023  
       New York, New York

                                      JESSE M. FURMAN  
                                      United States District Judge